# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MARY FRANCES WAGLEY, JAMES WAGLEY, ANNE WAGLEY AND MARY COPP, AS BENEFICIARIES OF THE MARY PENNEY WAGLEY IRREVOCABLE TRUST AND THE JEAN FRANCES GRAY TRUST, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:17-cv-766 |
| JPMORGAN CHASE BANK, N.A., INDIVIDUALLY, AS TRUSTEE OF THE MARY PENNEY WAGLEY IRREVOCABLE TRUST AND AS TRUSTEE OF THE JEAN FRANCES GRAY TRUST, AND KELLY ADAMS, INDIVIDUALLY, | § § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' MOTION TO REMAND AND BRIEF IN SUPPORT

**G. MICHAEL GRUBER**
State Bar No. 08555400
mgruber@getrial.com
**MICHAEL J. LANG**
State Bar No. 24036944
mlang@getrial.com
**J. MACHIR STULL**
State Bar No. 24070697
mstull@getrial.com
**ALEXANDRA J. LAMB**
State Bar No. 24091423
alamb@getrial.com
1445 Ross Avenue, Suite 2500
Dallas, TX 75202
Telephone: 214-855-6800
Facsimile: 214-855-6808

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.　　INTRODUCTION ............................................................................................ 1

II.　　STANDARDS ................................................................................................. 5

III.　　ARGUMENTS AND AUTHORITY ...................................................................... 7

　　A.　Defendants have failed to carry their burden of proof for improper joinder. ......... 8

　　B.　Plaintiffs have pleaded a legally cognizable claim against Adams for aiding and abetting breach of fiduciary duty under Texas law. ................................................ 12

　　　1.　Aiding and abetting breach of fiduciary duty is a valid, "settled" claim under Texas law. ........................................................................................... 12

　　　2.　Plaintiffs have sufficiently pleaded and alleged facts to support their claim that Adams aided and abetted JPM's breach of fiduciary duty. ................................ 14

IV.　　REQUEST FOR COSTS AND FEES ..................................................................... 19

V.　　PRAYER ..................................................................................................... 22

## <u>TABLE OF AUTHORITY</u>

### Cases

*Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539 (5th Cir. 2012) .................................................... 20

*Arana v. Allstate Texas Loyds*, 2013 WL 2149589, at *2 (N.D.Tex. May 7, 2013)...................... 6

*Backes v. Misko*, 486 S.W.3d 7 (Tex. App.—Dallas 2015, pet. denied) ..................................... 10

*C.W. v. Zirus*, 2012 WL 3776978, at *8 (W.D. Tex. 2012)......................................................... 9

*Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602 (N.D. Tex. 2009) .......................... 5,6,7,8

*CBIF Ltd. P'ship v. TGI Friday's Inc.*, 05-15-00157-CV, 2016 WL 7163849, at *15
    (Tex. App.—Dallas Dec. 5, 2016, no pet.) ............................................................................ 12

*Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687
    (Tex.App.-Fort Worth 2006, pet. denied) ............................................................................. 13

*Cox Texas Newspapers, L.P. v. Wooten*, 59 S.W.3d 717
    (Tex. App.—Austin 2001, pet. denied) ................................................................................. 12

*Crouch v. Trinque*, 262 S.W.3d 417 (Tex. App.--Eastland 2008,no pet.) ................................... 11

*Darocy v. Abildtrup*, 345 S.W.3d 129 (Tex. App.—Dallas 2011, no pet.).................................. 13

*Davis. v. Travelers Lloyds of Texas Insurance Co.*, 2009 WL 3255093, at *4
    (S.D. Tex. Sept. 29, 2009) .................................................................................................... 6

*Days Inn Worldwide, Inc. v. Sonia Investments,* No 3:04–CV–2278–D,
    2006 WL 3103912, at *19 n. 20 (N.D.Tex. Nov.2, 2006)................................................. 9,10

*Delaney v. Fidelity Lease Ltd*., 526 S.W.2d 543 (Tex.1975) ..................................................... 10

*Earthman's Inc. v. Earthman*, 526 S.W.2d 192
    (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ)................................................................. 13

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001)............................ 10

*Floyd v. Hefner*, 556 F. Supp. 2d 617 (S.D. Tex. 2008)............................................................. 9

*Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) ................................................................... 12

*Hornbuckle v. State Farm Lloyds*, 385 F.3d 538 (5th Cir. 2004) ................................................. 20

*Johnson v. Zurich Am. Ins. Co.*, 3:11-CV-0344-P, 2011 WL 3111919, at *7
    (N.D. Tex. June 29, 2011)................................................................................................... 20

*K & G Tool & Serv. Co. v. G & G Fishing Tool Serv*., 314 S.W.2d 782 (Tex.1958) ............. 10,13

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565 S.W.2d 509, 514 (1942)............... 12

*Kirby v. Smith & Nephew, Inc.*, 3:15-CV-2543-L, 2017 WL 661373,
    at *6 (N.D. Tex. Feb. 17, 2017) .......................................................................................... 7,8

*Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex.1984) ................................. 10,13

*Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Services, Inc.*, 809 F. Supp. 2d 582 (N.D. Tex. 2011) ... 13

*Marken Enter.'s, Inc. v. State,* No. 03–98–00352–CV, 1999 WL 162809, at *2
    (Tex.App.-Austin, Mar. 25, 1999, no pet.) ........................................................................... 13

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ............................................. 12

*Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 3:12-CV-4641-N, 2014 WL
    12572881, at *8 (N.D. Tex. Dec. 17, 2014)....................................................................... 9,12

*Orthoflex, Inc. v. Thermotek, Inc.*, No. 3:10-CV-2618-D, 2012 WL 2864510, *6
(N.D. Tex. July 12, 2012) ............................................................................................ 10
*Parsons v. Baylor Health Care Sys.*, 2012 WL 5844188, at *2 (N.D.Tex. Nov.19, 2012)............ 6
*Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631
(Tex.Civ.App.—El Paso 1972, no writ) ..................................................................... 10,13
*Portlock v. Perry*, 852 S.W.2d 578 (Tex. App.—Dallas 1993, writ denied)......................... 10,13
*Salazar v. Allstate Texas Lloyd's, Inc.,* 455 F.3d 571 (5th Cir.2006)............................................ 5
*Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568 (5th Cir.2004) .......................................... 6,7
*Span Enterprises v. Wood*, 274 S.W.3d 854 (Tex. App.–Houston [1st Dist.] 2008, no pet.).. 12,13
*Travis v. Irby,* 326 F.3d 644 (5th Cir.2003).................................................................................. 6
*Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005).................................................................................. 12
*Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290 (5th Cir. 2000)................................................. 20
*Woloshen v. State Farm Lloyds*, 2008 WL 4133386, at *3 (N.D. Tex. 2008)............................. 9
*Yeldell v. GeoVera Specialty Ins. Co.*, 3:12-CV-1908-M, 2012 WL 5451822, at *2
(N.D. Tex. Nov. 8, 2012) .................................................................................... 6,8,9,11
*Young v. Travelers Pers. Sec. Ins. Co.*, 4:16-CV-235, 2016
WL 4208566, Slip Copy, at *2 (S.D. Tex. Aug. 10, 2016) ...................................... 6

### Other Authorities

28 U.S.C. § 1332 .......................................................................................................................... 5
28 U.S.C. § 1441(b) (Supp.2012). ............................................................................................... 5
28 U.S.C. § 1447.............................................................................................................. 1,5,19,20

### Rules

Rule 12(b)(6)........................................................................................................................... 19,11

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Mary Frances Wagley ("Mary Frances"), James Wagley ("Wagley"), Anne Wagley ("Anne") and Mary Copp ("Copp"), as beneficiaries of the Mary Penney Wagley Irrevocable Trust (the "Penney Trust") and as beneficiaries of the Jean Frances Gray Trust (the "Gray Trust") (collectively, "Plaintiffs"), hereby file this Motion to Remand pursuant 28 U.S.C. § 1447 and Brief in Support (the "Motion"). In support thereof, Plaintiffs would respectfully show the Court the following:

## I. INTRODUCTION

1.      Plaintiffs have filed suit against Defendants JPMorgan Chase Bank, N.A. ("JPM") and Kelly Adams ("Adams") (collectively, "Defendants") in State Court for the torts Defendants committed against Plaintiffs in Texas (the "Texas State Court Action"). Specifically, Plaintiffs have brought claims: (1) against JPM, the trustee of the Penney Trust, for breaching the fiduciary duty it owed to the beneficiaries of the Penney Trust; and (2) against Adams, the Trust Officer for the Penney Trust, for aiding and abetting JPM's breach of fiduciary duty.

2.      In January of 2015, Plaintiffs began to question JPM, including Adams, about the performance of the Penney Trust, the investment strategy JPM was employing and the compensation JPM was receiving as a result of its actions as trustee of the Penney Trust (the "January 2015 Email"). In response, Adams stonewalled Plaintiffs' efforts by refusing to provide information responsive to the requests, blatantly ignoring certain questions and misrepresenting facts surrounding JPM's compensation as trustee. This failure to disclose continued for two years, during which time Adams never disclosed: (1) the requested information about JPM's fees or financial benefits; (2) that JPM was not investing the assets of the Penney Trust in a manner consistent with a growth strategy; (3) that JPM received at least $188,245.72 in additional, undisclosed fees.

3.      After more than a year and a half of evasive tactics and non-answers by JPM and Adams, during which time the performance of the Penney Trust continued to falter and JPM continued to collect fees, Plaintiffs' concerns about JPM's loyalty reached an all-time high. As a result, Plaintiffs retained counsel in the fall of 2016 and began making formal demands for material information regarding the assets of the Penney Trust, JPM's actions as trustee of the Penney Trust and the benefits and compensation JPM had received as a result of acting as trustee of the Penney Trust. Moreover, Plaintiffs' correspondence explicitly charged JPM with systematically breaching its fiduciary duty to Plaintiffs by, among other things: (1) engaging in undisclosed, self-interested investments, including investing Penney Trust funds in Highbridge Capital Partners, which was solely owned by JPM; (2) refusing to disclose material information regarding the Penney Trust to Plaintiffs (even when directly requested to do so); and (3) pursuing an investment strategy that benefitted JPM instead of the growth strategy that Plaintiffs requested and that JPM indicated it would pursue. Plaintiffs' demands for information made it clear that Plaintiffs would file suit should Defendants continue to withhold material information about the Penney Trust from its beneficiaries.

4.      Plaintiffs also communicated with equal emphasis that, while they had a clear preference for settling the dispute outside of litigation, they would not blindly resolve any claim against JPM without having the benefit of the complete disclosure and total candor that a trustee is required to provide beneficiaries. Therefore, the first demand Plaintiffs made to JPM in the fall of 2016 was a demand for JPM to schedule a meeting with Plaintiffs and, prior to that meeting, provide Plaintiffs with the requested information.  In response, JPM engaged in discussions with Plaintiffs and, at all times, indicated that the lawsuit Plaintiffs were prepared to file would not be necessary because: (1) JPM was preparing an accounting in response to Plaintiffs' requests for

information, which it would deliver to Plaintiffs as soon as possible; and (2) JPM was willing to meet with Plaintiffs to discuss the information requested, the accounting and a resolution to the dispute.

5.      For example, on November 16, 2016, in response to Plaintiffs' request for an update on the promised accounting, counsel for JPM represented the following:

> Hi Michael,
> Thanks for reaching out. We are continuing our work on the accounting, which is taking some time due to, among other things, the length of time JPMorgan served as Trustee. We are proceeding as quickly as we reasonably can, but cannot yet estimate with confidence when it will be complete. We will update you as it becomes available. Please let us know if you have any other questions.
> Thanks,
> John

6.      Trusting JPM's representations that it was willing to meet with Plaintiffs to discuss the requested information and a potential resolution of the dispute, Plaintiffs held off filing a lawsuit and waited for the promised accounting and the other information they had requested from JPM. Notably, during this time, neither JPM, nor any of its representatives (including Adams), ever indicated to Plaintiffs that Defendants would take judicial action before responding to Plaintiffs' direct requests for material information regarding the Penney Trust. Defendants certainly never indicated that they would be seeking a complete release of liability prior to answering Plaintiffs' questions.

7.      Ultimately, however, that is exactly what Defendants did. Defendants never did "update" Plaintiffs as the accounting became available. In fact, Defendants never responded to Plaintiffs' last piece of correspondence, in which Plaintiffs extended the deadline for the requested information and reiterated a desire to meet with Defendants. Instead, Defendants used the time extended by Plaintiffs, not to respond to Plaintiffs' requests, but to draft and file a petition, which

Adams executed on JPM's behalf, in Rochester, New York (the "NY Action").[1] In the NY Action, Defendants asked the court to: (1) settle the accounting JPM had prepared of the Penney Trust; (2) approve JPM's resignation as trustee; and (3) *release JPM from any and all liability relating to its actions as trustee*.[2] On the very same day, Adams sent Mary Frances (directly and without copying known counsel) a letter admitting that JPM, despite Adams' representations to the contrary, had "incorrectly charged" an additional $188,245.72 in fees to the Penney Trust. To date, Adams, despite the fact that she is still the Trust Officer for the Penney Trust, has failed to explain or disclose to Plaintiffs how JPM charged $188,245.72 in fees, when Adams previously represented that no such fees were charged.

8.     As a result of Defendants' misleading actions and false representations, Plaintiffs were put in the urgent position of getting their allegations on file quickly enough to prevent JPM from hijacking their choice of venue. On February 7, 2017, less than three weeks after being surprised with the NY Action, Plaintiffs filed their Original Petition in the Texas State Court Action. A week later, Plaintiffs filed a First Amended Petition (the "Petition").[3] On March 16, 2017, Defendants filed a Notice of Removal, alleging that this Court has subject matter jurisdiction because Adams was "improperly joined" in the Texas State Court Action (the "Notice").[4]

9.     Defendants' Notice lacks merit. As Plaintiffs will demonstrate: (1) Defendants have failed to carry their burden of demonstrating improper joinder; (2) Plaintiffs have sufficiently

---

[1] *See* [**APPX0001-APPX0013**], the NY Action, which is signed by Adams on behalf of JPM and verified by Adams on behalf of JPM, is attached as an exhibit to Exhibit C-8 to the Defendants' Notice of Removal. For ease of reference, a true and correct copy of the NY Action is attached hereto as **Exhibit A** and incorporated herein by reference.

[2] *Id.*

[3] *See* [**APPX0014-APPX0044**], the Petition is attached as Exhibit C-2 to Defendants' Notice of Removal. For ease of reference, a true and correct copy of the Petition is attached hereto as **Exhibit B** and incorporated herein by reference.

[4] Prior to filing the Notice, Defendants filed a Motion to Dismiss in the Texas State Court Action. If the case is remanded, the issues raised therein will be handled in State Court. Therefore, Plaintiffs do not currently address the merits of Defendants' arguments in their Motion to Dismiss, which mirror the allegations in their Amended Motion to Transfer, filed in Federal Court on March 28, 2017 (**DKT #7**).

pleaded a viable claim against Adams for aiding and abetting JPM's breach of fiduciary duty; and (3) Defendants have misrepresented both the elements of aiding and abetting, as well as the facts alleged against Defendants in the Petition, in an effort to manufacture a pleading defect and the appearance of improper joinder. Therefore, because Adams is a proper party to the Texas State Court Action, and because Defendants have failed to carry their burden to prove improper joinder, this Court lacks jurisdiction and must grant Plaintiffs' Motion to Remand.

## II. STANDARDS

10.     A case shall be remanded if, at any time before final judgment, it appears that the district court lacks subject matter jurisdiction.[5] In certain circumstances, a successful remand may require the removing defendant to pay the plaintiff's costs and any actual expenses, including attorneys' fees, incurred as a result of the removal.[6]

11.     Defendants assert that the Court has subject matter jurisdiction over this case due to complete diversity of citizenship under 28 U.S.C. § 1332.[7] When federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, an action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[8] In other words, a case may only be removed despite the presence of a resident defendant if the removing defendant shows that the resident defendant was ***improperly*** joined.[9]

12.     Removal jurisdiction is strictly construed, with any doubts resolved in favor of remanding the case back to State Court.[10] Indisputably, "[t]he burden of persuasion on those who

---

[5] 28 U.S.C. § 1447(c).
[6] *Id.*
[7] The parties do no dispute that the amount-in-controversy requirement has been met and do not dispute the domicile of Adams.
[8] 28 U.S.C. § 1441(b) (Supp.2012).
[9] *Salazar v. Allstate Texas Lloyd's, Inc.,* 455 F.3d 571, 574 (5th Cir.2006).
[10] *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 606 (N.D. Tex. 2009).

claim fraudulent joinder is a heavy one."[11] Furthermore, all "contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" are resolved in the plaintiff's favor.[12]

13.     Improper joinder is established by showing either: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the nondiverse defendant in State Court.[13] As the Notice only asserts the latter (*i.e.*, that Plaintiffs are unable to establish aiding and abetting breach of fiduciary duty against Adams under Texas law), the test for improper joinder is as follows:

> whether the defendant has demonstrated that there is no ***possibility of recovery*** by the plaintiff against an in-state defendant, which stated differently means that there is ***no reasonable basis*** for the district court to predict that the plaintiff ***might*** be able to recover against an in-state defendant.[14]

The issue for the Court is "whether the plaintiff can establish any potentially viable state-law cause of action."[15] In making this determination, the court "looks initially at the allegations in the pleadings to determine whether a claim under state law exists against the non-diverse defendant."[16]

14.     Importantly, the plaintiff's "likelihood of success" is not evaluated.[17] Instead, the court "test[s] the sufficiency of the allegations contained in the pleadings" to determine only "whether

---

[11] *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir.2003).

[12] *Cantor,* 641 F. Supp. 2d at 606; *see also Yeldell v. GeoVera Specialty Ins. Co.*, 3:12-CV-1908-M, 2012 WL 5451822, at *2 (N.D. Tex. Nov. 8, 2012) (Lynn, B.).

[13] *Arana v. Allstate Texas Loyds*, 2013 WL 2149589, at *2 (N.D.Tex. May 7, 2013) (Fitzwater) (citing *Parsons v. Baylor Health Care Sys.,* 2012 WL 5844188, at *2 (N.D.Tex. Nov.19, 2012) (Fitzwater) and *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir.2004)).

[14] *Arana*, 2013 WL 2149589, at *2 (citing *Smallwood,* 385 F.3d at 573) (emphasis added); *see also Travis v. Irby,* 326 F.3d 644, 648 (5th Cir.2003) (explaining that terms "no possibility" of recovery and "reasonable basis" for recovery have essentially identical meaning, and holding that pleadings must show more than "any mere theoretical possibility of recovery")).

[15] *See Davis. v. Travelers Lloyds of Texas Insurance Co.*, 2009 WL 3255093, at *4 (S.D. Tex. Sept. 29, 2009) (Hoyt).

[16] *Young v. Travelers Pers. Sec. Ins. Co.*, 4:16-CV-235, 2016 WL 4208566, Slip Copy, at *2 (S.D. Tex. Aug. 10, 2016) (Harmon) (citing *Smallwood,* 385 F.3d at 573) (emphasis added).

[17] *Id.* at *6 (N.D. Tex. Feb. 17, 2017).

---

the plaintiff has pleaded a legally cognizable claim."[18] A legally cognizable claim is a claim upon which relief can be granted.[19] Importantly, "the focus of the inquiry must be on the joinder, not the merits of the [p]laintiff's case."[20] The court must take as true all of a plaintiff's well-pleaded allegations of fact.[21]

15.     In limited circumstances, where the removing party has identified the presence of "discrete and undisputed facts" that would **preclude** the plaintiff's recovery, the court may conduct a "summary" inquiry.[22] However, a removal that contains only "non-specific denials" and fails to identify the presence of such discrete and undisputed facts is "inadequate to trigger a summary-type analysis" and "insufficient to rebut the specific allegations" against a resident defendant.[23]

16.     As shown below, Defendants have failed to carry their burden of showing that Adams was improperly joined.

### III. ARGUMENTS AND AUTHORITY

17.     Defendants do not dispute that Adams is a Texas resident,[24] that she was the Trust Officer for the Penney Trust[25] or that the claim Plaintiffs have brought against Adams is a claim for aiding and abetting JPM's breach of fiduciary duty.[26] As a result, the only disputed issue before

---

[18] *Id.*
[19] *Id.*
[20] *Smallwood*, 385 F.3d at 573 ("Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.").
[21] *Cantor*, 641 F. Supp. 2d at 607.
[22] *Kirby v. Smith & Nephew, Inc.*, 3:15-CV-2543-L, 2017 WL 661373, at *6 (N.D. Tex. Feb. 17, 2017) (Lindsay)
[23] *Id.*
[24] *See* the Notice at p. 5 ("Although Defendant Ms. Adams is a Texas resident…").
[25] *Id.* at p. 2 ("JPMorgan's employee and the most recent Trust Officer of the Penney Trust, Ms. Adams…"); and at p. 7 ("The only factual allegations concerning Ms. Adams are that she acted within the scope of her employment in assisting the administration of the Penney Trust in connection with her duties as the JPMorgan trust officer in charge of administering the Penney Trust.").
[26] *Id.* at p. 2 ("Plaintiffs also purport to assert a claim against…JPMorgan's employee and the most recent Trust Officer of the Penney Trust, Ms. Adams, for aiding JPMorgan's alleged breach of fiduciary duty.").

the Court is whether Plaintiffs have pleaded a legally cognizable claim against Adams for aiding and abetting JPM's breach of fiduciary duty under Texas law.

### A.    Defendants have failed to carry their burden of proof for improper joinder.

18.    The heavy burden to remove on the basis of improper joinder rests squarely on **Defendants'** shoulders. To demonstrate improper joinder, Defendants must show that, despite Plaintiffs asserting facts demonstrating a viable claim against Adams, there is no reasonable basis for the Court to predict that Plaintiffs **might** be able to recover against Adams.[27] As stated above, removal jurisdiction is strictly construed, with any doubts resolved in favor of remanding the case back to state court.[28] Moreover, the Court must resolve all "contested issues of material fact, and any ambiguity or uncertainty in the controlling state law," in Plaintiffs' favor.[29]

19.    Defendants have failed to carry this burden. In the Notice, JPM does not dispute any of the following statements:

     a.     JPM, as trustee of the Penney Trust, owed Plaintiffs a fiduciary duty;

     b.     Plaintiffs have pleaded a breach of fiduciary duty claim against JPM;

     c.     Aiding and abetting breach of fiduciary duty is a viable claim under Texas law;

     d.     Adams was the Trust Officer of the Penney Trust;

     e.     Adams knew that JPM, as trustee of the Penney Trust, owed Plaintiffs, as beneficiaries of the Penney Trust, a fiduciary duty;

     f.     Adams can be individually liable for aiding and abetting; or

     g.     Plaintiffs can establish all of the elements for a claim for aiding and abetting breach of fiduciary duty.[30]

---

[27] *Kirby*, 2017 WL 661373 at *4 ("Since Defendants do not assert fraud on the part of Plaintiffs, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.").

[28] *Cantor*, 641 F. Supp. 2d at 606.

[29] *Id.*; *see also Yeldell*, 2012 WL 5451822, at *2.

[30] In addition to omitting any legal citations regarding the elements and standard of liability for aiding and abetting, JPM does not put forth any evidence demonstrating recovery against Adams for aiding and abetting would be

20.     Importantly, the Notice only challenges Plaintiffs' claim against Adams with non-specific denials and fails to identify the presence of discrete and undisputed facts (or the absence of facts supporting an applicable element of aiding and abetting) that would purportedly preclude Plaintiffs' recovery against Adams for aiding and abetting breach of fiduciary duty.

21.     Moreover, the *sole basis* for Defendants' claim that Plaintiffs cannot recover is that Adams was acting within the scope of her employment. Specifically, Defendants argue that, under Texas law:

> a.     "Aiding and abetting is a derivative tort, *like* conspiracy;"[31]
>
> b.     Under Texas law, a corporation cannot *conspire* with itself through its agents (where the agent is not acting either outside the scope of her employment or for a personal purpose or benefit);[32] and
>
> c.     Adams was acting within the scope of her employment.[33]

However, Defendants' argument, on its face, is inadequate to trigger a summary inquiry from the Court regarding Plaintiffs' claim for aiding and abetting against Adams. As shown below, Defendants' argument is unfounded.

22.     *First*, as this Court is aware, aiding and abetting and conspiracy are "two separate claims with different elements of proof."[34]   Aiding and abetting a breach of fiduciary duty is an

---

unlikely. *See Yeldell*, 2012 WL 5451822, at *4 ("Defendants have not provided any evidence showing that recovery against Allcorn would be unlikely.").

[31] *See* the Notice at pp. 9-10 ("Plaintiffs have failed to state a plausible claim against Ms. Adams. Under Texas law aiding and abetting is a derivative tort, like conspiracy.").

[32] *See id.*

[33] *See id.* ("Here, there is no allegation that Ms. Adams was acting outside the scope of her employment with JPMorgan or for her personal benefit apart from the benefit to JPMorgan. Indeed, the First Amended Petition acknowledges that Ms. Adams was acting within the scope of her employment and on behalf of JPMorgan.").

[34] *Floyd v. Hefner*, 556 F. Supp. 2d 617, 659 (S.D. Tex. 2008) ("The Lawyers also argue that aiding and abetting a breach of fiduciary duty claim is redundant to a conspiracy claim and should be dismissed. *The court disagrees. Aiding and abetting a breach of fiduciary duty and conspiracy are two separate claims with different elements of proof."*); *see also Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 3:12-CV-4641-N, 2014 WL 12572881, at *8 (N.D. Tex. Dec. 17, 2014) (Godbey) ("...the Court aligns itself with the number of courts that have recognized claims for aiding and abetting breach of fiduciary duty. *See, e.g., C.W. v. Zirus*, 2012 WL 3776978, at *8 (W.D. Tex. 2012) (Rodriguez); *Woloshen v. State Farm Lloyds*, 2008 WL 4133386, at *3 (N.D. Tex. 2008) (Fitzwater); *Floyd*, 556 F. Supp. 2d at 654–55. Thus, the Court declines to hold that Plaintiffs' aiding and abetting breach of fiduciary duty claims are not recognized in Texas."); *see also Days Inn Worldwide, Inc. v. Sonia*

---

exception to the general rule that officers of a corporation are insulated from liability based upon

activities performed in the scope of their employment:

> The general rule of corporate law is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation. *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543 (Tex.1975). ***However, a corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has knowledge of the tortious conduct, either actual or constructive.*** *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984); *K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 793 (Tex.1958); *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex.Civ.App.—El Paso 1972, no writ). Instigating, aiding, or abetting the wrongdoing constitutes participation. *Permian Petroleum Co.*, 484 S.W.2d at 634.[35]

Thus, Adams can be held individually liable for aiding and abetting JPM's breach of fiduciary

duty, ***even if acting within the scope of her employment***.

23.      ***Second***, whether Adams acted within the scope of her employment is irrelevant for the

following reasons:

    a.      As stated above, Texas courts have expressly rejected Defendants' argument that a defendant acting within the scope of her employment precludes a claim for aiding and abetting breach of fiduciary duty;[36]

    b.      Whether Adams was acting within the scope of her employment is relevant only to a ***conspiracy claim***;[37]

---

*Investments,* No 3:04–CV–2278–D, 2006 WL 3103912, at *19 n. 20 (N.D.Tex. Nov.2, 2006) (Fitzwater) ("Civil conspiracy is a separate cause of action that requires, *inter alia,* an underlying tort and a 'meeting of the minds' among the coconspirators 'on the object or course of action' to be taken. By contrast, a cause of action under *Cox* and *Kinzbach* requires only the knowing participation of a party in a breach of a fiduciary duty and does not require a conspiratorial agreement.") (internal citations omitted); *Backes v. Misko*, 486 S.W.3d 7, 27 (Tex. App.—Dallas 2015, pet. denied) (internal citations omitted) (The elements of a civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. The object to be accomplished must be either an unlawful purpose or a lawful purpose to be achieved by unlawful means").

[35] *Portlock*, 852 S.W.2d at 582.

[36] *Id.*

[37] *See* the Notice at pp. 9-10 ("Plaintiffs have failed to state a plausible claim against Ms. Adams. Under Texas law aiding and abetting is a derivative tort, ***like conspiracy***. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001). Texas law recognizes that an agent ***can conspire*** with its principal employer only "if the agent is not acting within its corporate capacity." *Orthoflex, Inc. v. Thermotek, Inc.*, No. 3:10-CV-2618-D, 2012 WL 2864510, *6 (N.D. Tex. July 12, 2012) (Fitzwater) (internal quotations omitted) (applying Texas law and granting motion to dismiss ***conspiracy claim*** where pleadings did not allow the court to draw the reasonable inference that agent would have personally benefitted "apart from benefitting the corporations for whom he was acting"); *see also*

---

c.   Plaintiffs have not alleged or asserted any conspiracy claim against Adams, nor have they alleged that Adams conspired with JPM; and

d.   Defendants fail to cite a single case supporting their conclusion that an officer cannot be held individually liable for aiding and abetting a breach of fiduciary duty unless Plaintiffs can prove that the officer acted outside the scope of her employment or for a personal purpose or benefit.

As a result, the only purported pleading deficiency that Defendants identify to support the removal of this action is a purported deficiency in a claim that Plaintiffs are **not** asserting against Adams. Therefore, such an argument is irrelevant to whether Plaintiffs are able to prove a claim for aiding and abetting breach of fiduciary duty.

24.   **Third**, Defendants have not provided any evidence, or alleged the presence of discrete and undisputed facts, that would demonstrate recovery against Adams is precluded under Texas law.[38]

25.   Consequently, because aiding and abetting breach of fiduciary duty is a viable, well-settled claim under Texas law that is separate and apart from conspiracy, and because an officer may be individually liable for aiding in her company's tortious acts, Defendants have failed to carry their heavy burden of demonstrating that there is no possibility of Plaintiffs obtaining the recovery sought against Adams.  As a result, on this basis alone, the Court should find that removal is improper and remand this case back to the District Court of Dallas County, Texas, 95th Judicial District.  Nonetheless, Plaintiffs have pleaded a viable claim against Adams.

---

*Crouch v. Trinque*, 262 S.W.3d 417, 426-27 (Tex. App.--Eastland 2008,no pet.) (applying general rule that a "corporation **cannot conspire** with itself through its agents" where the agent is "not acting outside [his] capacity as an employee or agent or . . . acting for a person purpose of [his] own"). Here, there is no allegation that Ms. Adams was acting outside the scope of her employment with JPMorgan or for her personal benefit apart from the benefit to JPMorgan. Indeed, the First Amended Petition acknowledges that Ms. Adams was acting within the scope of her employment and on behalf of JPMorgan. (Exh. C-2, First Amended Pet. at ¶¶9- 10, 69, 74, 85, 92-95.) Under these circumstances, because the pleadings do not support a claim for **aiding and abetting** under a Rule 12(b)(6) standard, the First Amended Petition does not support a claim against Ms. Adams for purposes of diversity jurisdiction.") (emphasis added).

[38] *See Yeldell*, 2012 WL 5451822 at *4 ("Defendants have not provided any evidence showing that recovery against Allcorn would be unlikely.").

**B.    Plaintiffs have pleaded a legally cognizable claim against Adams for aiding and abetting breach of fiduciary duty under Texas law.**

**1.    Aiding and abetting breach of fiduciary duty is a valid, "settled" claim under Texas law.**

26.    Plaintiffs allege one claim against Adams—aiding and abetting JPM's breach of fiduciary duty.[39] In the Notice, Defendants do not dispute that aiding and abetting breach of fiduciary duty has been a valid, "settled" claim under Texas law since *Kinzbach Tool Co. v. Corbett-Wallace Corp* in 1942.[40]

27.    To plead a claim for aiding and abetting breach of fiduciary duty, a plaintiff only has to allege three elements: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship."[41] Notably, Defendants do not argue that Plaintiffs would be unable prove each and every one of these elements.

28.    As the Texas Supreme Court has stated, "[c]orporations can, of course, only act through individuals."[42] Importantly, Texas courts have held that an agent, acting in its capacity as an agent, can be held liable for a principal's breach of fiduciary duty.[43] Specifically, a corporate

---

[39] *See* **Exhibit B**, the Petition at [**APPX0041-APPX0042**] pp. 28-29, ¶¶ 92-95.

[40] *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574, 160 S.W.2d 509, 514 (1942) ("It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such."); *see also* fn. 34 above.

[41] *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007); *Kinzbach*, 160 S.W.2d at 514 ; *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.—Austin 2001, pet. denied) ("A cause of action premised on contribution to a breach of a fiduciary duty under *Kinzbach* must involve the knowing participation in such a breach."); *CBIF Ltd. P'ship v. TGI Friday's Inc.*, 05-15-00157-CV, 2016 WL 7163849, at *15 (Tex. App.—Dallas Dec. 5, 2016, no pet.) (Schenck) ("A claim that a defendant knowingly participated in a breach-of-fiduciary-duty by a third party necessarily hinges on the existence of a fiduciary duty owed by the third party to the plaintiff. In addition to the existence of a fiduciary duty, the plaintiff must show the defendant knew of the fiduciary relationship and was aware of his participation in the third party's breach of its duty.") (internal citations omitted).

[42] *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005).

[43] *CBIF*, 2016 WL 7163849, at *14-15 ("Citing *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995), Flory argues that he cannot be held individually liable for CBIF's breach of fiduciary duty because he acted only in his capacity as manager of Columbia, the general partner of CBIF, and acted in good faith, believing that what he did was for the best interest of CBIF and Columbia. But *Holloway* was a breach-of-contract and tortious-interference case, not a breach-of-fiduciary-duty case. Next, citing *Span Enterprises v. Wood*, 274 S.W.3d 854, 859 (Tex. App.–

officer, such as Adams, "may be held individually liable for a corporation's tortious conduct if [she] knowingly participate[d] in the conduct or has knowledge of the tortious conduct, either actual or constructive."[44] Under Texas law, aiding or abetting constitutes sufficient "participation" in tortious conduct.[45]

29.     It is undisputed that, with regard to the Penney Trust, JPM has acted at all relevant times through its Trust Officers. It is also undisputed that, since the spring of 2014, the main individual JPM has acted through with regard to the Penney Trust is Adams—the Trust Officer for the Penney Trust and Plaintiffs' direct point of contact.[46]

---

Houston [1st Dist.] 2008, no pet.), Columbia and Flory argue agents cannot be held liable for aiding and abetting a violation of a fiduciary duty by their principal. Columbia and Flory's reliance on *Wood* is likewise misplaced. In that case, the court of appeals upheld the trial court's summary judgment for attorneys on the ground that there was no cause of action for aiding and abetting a breach of fiduciary duty because no attorney–client relationship existed in the first instance. *Id. Wood* does not reach the question of whether an agent might be held liable for aiding and abetting a principal's breach of fiduciary duty. When a defendant knowingly participates in the breach of a fiduciary duty, he becomes a joint tortfeasors and is liable as such."); *see Darocy v. Abildtrup*, 345 S.W.3d 129, 133 (Tex. App.—Dallas 2011, no pet.) (finding there was sufficient evidence to support the trial court's finding that a corporation's secretary, treasurer, and member of the board was liable for the corporation's breach of fiduciary duty as a result of his "role and involvement in OGMP's accounts and funding, his oversight and management of the oil and gas operations, and his knowledge of problems regarding insufficient funds and outstanding invoices" of the corporation).

[44] *Portlock v. Perry*, 852 S.W.2d 578, 582 (Tex. App.—Dallas 1993, writ denied) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984), *K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 793 (Tex.1958) and *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex.Civ.App.—El Paso 1972, no writ)).

[45] *Portlock*, 852 S.W.2d at 582; *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Services, Inc.*, 809 F. Supp. 2d 582, 596 (N.D. Tex. 2011) ("Under Texas law, corporate officers may be liable for the torts of their companies: "A corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has either actual or constructive knowledge of the tortious conduct." *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 701 (Tex.App.-Fort Worth 2006, pet. denied); *see also Marken Enter.'s, Inc. v. State*, No. 03–98–00352–CV, 1999 WL 162809, at *2 (Tex.App.-Austin, Mar. 25, 1999, no pet.) ("[A] n officer or agent of the corporation may be held liable for the tax receipts based on his own individual tortious conduct in instigating, aiding or abetting ..."); *Earthman's Inc. v. Earthman*, 526 S.W.2d 192, 206 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ) ("[W]here corporate directors and officers actively participate in the conversion of another's property by instigating, aiding or abetting the corporation, they may be held liable as joint tortfeasors with the corporation."). Thus, there is no reason to believe, as Defendants suggest, that corporate officers are given blanket immunity on the basis of their status within the corporation.").

[46] *See* **Exhibit B**, the Petition, at [**APPX0027**] p. 14, ¶ 42 (citing e-mail correspondence to John Canning and Adams, "In an email to **JPM** from early-2015, Wagley reiterated this directive: "As I have mentioned to you in numerous conversations that we have had I would prefer that this money be invested in an S&P index fund or a Vanguard Fund that mirrors the broad market. You are aware that the focus of this Trust for all the folks in my family is to grow the principal.") (emphasis added) and [**APPX0047-APPX0048**] the January 2015 Email, a true and correct copy of which is attached hereto as **Exhibit C** and incorporated herein by reference; *see also* **Exhibit B** at [**APPX0035-APPX0036**] pp. 22-23, ¶¶ 68-69 ("After several months with no sign of improvement in the

**2.  Plaintiffs have sufficiently pleaded and alleged facts to support their claim that Adams aided and abetted JPM's breach of fiduciary duty.**

30.     *First*, Plaintiffs have sufficiently alleged that, as a matter of law, a fiduciary relationship existed between JPM, as trustee of the Penney Trust, and the Plaintiffs, as beneficiaries of the Penney Trust.[47]

31.     *Second,* Plaintiffs have sufficiently alleged that Adams, as a Vice President of JPM *and the Trust Officer for the Penney Trust*, had knowledge of the existence of the fiduciary relationship between JPM and Plaintiffs, *i.e.,* that JPM was the trustee of the Penney Trust.[48]

32.     *Third*, Plaintiffs have sufficiently alleged that JPM breached its fiduciary duty to Plaintiffs by: (1) failing to follow the Reasonably Prudent Investor Rule;[49] (2) engaging in self-dealing by investing in proprietary funds without any disclosure to Plaintiffs;[50] (3) engaging in

---

performance of the Penney Trust or in the management of the investments, Wagley again reached out to *JPM* on January 16, 2015. He wrote: I would like to look at the performance of the Trust over the last ten years. In addition to performance I would like to look at fees that JP Morgan has received from managing this trust. Also will you please disclose any fees that JP Morgan has obtained in regards to investing in Funds and or trading individual stocks. In response, to the email, Adams misleadingly provided a "breakdown of account administrative fees" for the ten-year period requested. ... Moreover, at the time Adams provided Wagley with the breakdown of account fees, Adams did not disclose the $188,245.72 in additional fees that JPM charged to the Penney Trust.") (emphasis added) and [**APPX0046-APPX0048**] the January 2015 Email; *see also* **Exhibit B** at [**APPX0037**] p. 24, ¶ 74 ("Growing tired of *JPM's* evasive tactics, continuing breaches of disclosure and general lack of care, the Plaintiffs again scheduled a meeting with the Penney Trust team in Dallas on June 9, 2016. Smith, Canning, Agather and Adams were present from JPM. During that meeting, the Plaintiffs expressed their intention and desire to resolve the dispute over fees and self-dealing quickly, privately and cordially.") (emphasis added); also at [**APPX0039-APPX0040**] pp. 26-27, ¶ 84 ("*JPM* ignored the Plaintiffs' requests for information contained within the Second Demand Letter. In fact, *JPM* never contacted counsel for the Plaintiffs with any questions or concerns about the information requested. Instead, the only further communication from *JPM* was the petition *it* filed to withdraw as Trustee of the Penney Trust in the State of New York.") (emphasis added); also at [**APPX0040**] p. 27, ¶ 85 ("Shortly after *JPM* filed the Withdrawal Petition, Adams sent Mary Frances a letter disclosing, without any explanation, that JPM had improperly charged the Penney Trust $188,245.72 in fees. Remarkably, Adams copied neither the counsel that *JPM* knew represented Mary Frances nor the son that *JPM* knew had become the preferred point of contact for Mary Frances. Instead, Adams sent the letter directly and exclusively to the 89-year-old beneficiary of the Penney Trust."); *see also* **Exhibit A**, the NY Action, at [**APPX0002-APPX0003**] which *Adams signed and verified on behalf of JPM*.

[47] *See* **Exhibit B** at [**APPX0024**] p. 11, ¶ 33; also at [**APPX0025**] p. 12, ¶¶ 35-36; *see also Johnson v Brewer & Pritchard, P.C.*, 73 SW3d 193, 199 (Tex. 2002) ("Our courts have long recognized that certain fiduciary duties are owed by a trustee to a beneficiary of the trust, an executor to the beneficiaries of an estate, and an attorney to a client.").

[48] *See* **Exhibit B** at [**APPX0018-APPX0019**] pp. 5-6, ¶ 16; also at [**APPX0042**] p. 29, ¶ 94.

[49] *Id.* at [**APPX0029**] p. 16, ¶¶ 47-48.

[50] *Id.* at [**APPX0029-APPX0032**] pp. 16-19, ¶¶ 49-54.

self-dealing by investing in proprietary hedge funds, including JPM's undisputed investment in Highbridge Capital Management (a JPM proprietary hedge fund); [51] (4) engaging in a self-interested investment strategy, which was contrary to Plaintiffs' stated objectives;[52] (5) engaging, upon information and belief, in self-dealing by receiving placement fees for investments;[53] (6) failing to disclose that it was not investing pursuant to a growth strategy; [54] (7) failing to affirmatively disclose all self-interested transactions; and (8) failing to disclose all benefits JPM has gained by acting as the trustee of the Penney Trust.[55]

33. In addition, Plaintiffs have sufficiently alleged that JPM, through its representatives, breached its fiduciary duty to Plaintiffs by failing to comply with repeated requests by Plaintiffs to disclose facts relating to the above breaches.[56] Such requests for disclosure include requests for JPM to: (1) identify all self-interested investments; (2) provide the analysis that JPM performed in deciding to place the Penney Trust's funds in JPM-owned vehicles, rather than third-party investments that yielded significantly greater returns; and (3) describe and disclose all fees, including placement fees and retrocessions, and revenue JPM has received from acting as trustee of the Penney Trust.[57]

34. As a result of JPM's breach of the duty to disclose, JPM was able to secure substantial benefits for itself in the form of fees (including the nearly $200,000 in undisclosed fees JPM charged the Penney Trust) at the expense of the Penney Trust, which would have benefited from JPM engaging in a low-risk, low-fee growth strategy. Moreover, because Plaintiffs were unaware

---

[51] *Id*. at [**APPX0032-APPX0033**] pp. 19-20, ¶¶ 55-60.
[52] *Id*. at [**APPX0033-APPX0034**], pp. 20-21, ¶¶ 61-63.
[53] *Id*. at [**APPX0034-APPX0035**] pp. 21-22, ¶¶ 64-66.
[54] *See, e.g., id*. at [**APPX0026-APPX0029**], pp. 13-16, ¶¶ 41-46; also at [**APPX0029**], p. 16, ¶¶ 47-48; also at [**APPX0033-APPX0034**], pp. 20-21, ¶¶ 61-63; and also at [**APPX0040-APPX0041**], pp. 27-28, ¶¶ 88-89.
[55] *See, e.g., id*. at [**APPX0016-APPX0018**] pp. 3-5, ¶¶ 5-10; also at [**APPX0029-APPX0031**] pp. 16-18, ¶¶ 49-54; and also at p. 20 ¶ 59.
[56] *See, e.g., id*. at [**APPX0017-APPX0018**], pp. 4-5, ¶¶ 9-10; also at [**APPX0035-APPX0040**] pp. 22-27 ¶¶ 67-85
[57] *See id*. at p. 28, ¶ 90.

of JPM's preference for self-interested investments and its disregard for Plaintiffs' growth objectives, Plaintiffs allowed JPM to continue to retain control over the assets in the Penney Trust, which resulted in increased damages to the Penney Trust.

35.     **Fourth**, while knowing participation in any one of the above-mentioned breaches is sufficient to establish a claim for aiding and abetting breach of fiduciary duty, Plaintiffs have sufficiently alleged that Adams knowingly participated in JPM's breach of its fiduciary duties of disclosure. In fact, the Petition names Adams specifically as the individual who, in response to the January 2015 Email, stonewalled Plaintiffs' various requests for information (and their express directive to pursue growth over income for the Penney Trust) and violated the duties of candor, good faith and full disclosure.[58]

36.     Plaintiffs also allege that JPM, through Adams, either evaded Plaintiffs' requests for information or, to the extent she responded, provided Plaintiffs with misleading and false information.[59]  For example, from the time Adams received the January 2015 E-mail until the time she signed the petition in the NY Action on behalf of JPM **two years later**, Adams, as the Trust Officer for the Penney Trust: (1) failed to disclose to Plaintiffs the information they requested regarding the other fees and benefits that JPM received as a result of its actions as trustee of the Penney Trust; (2) failed to disclose to Plaintiffs that JPM was not investing the assets of the Penney Trust in a manner consistent with a growth strategy; (3) misrepresented the amount and source of fees that JPM received as a result of its role as trustee of the Penney Trust;[60] (4) concealed and failed to disclose at least $188,245.72 in fees even after receiving

---

[58] *Id.*; *see also* **Exhibit C**, the January 2015 Email at [**APPX0045-APPX0048**].
[59] *See, e.g.,* **Exhibit B**, the Petition, at [**APPX0017-APPX0018**] pp. 4-5, ¶ 9; also at [**APPX0035-APPX0039**] pp. 22-25, ¶¶ 67-78.
[60] *See id.* at [**APPX0035-APPX0036**] pp. 22-23, ¶¶ 68-69.

direct requests from Plaintiffs to disclose all fees that JPM charged the Penney Trust;[61] and (5) never corrected her earlier misrepresentation that JPM did not charge the Penney Trust any fees over and above administration fees.

37.     The Petition describes the January 2015 E-mail exchange between Wagley and Adams as follows:

> After several months with no sign of improvement in the performance of the Penney Trust or in the management of the investments, Wagley again reached out to JPM on January 16, 2015. He wrote: "I would like to look at the performance of the Trust over the last ten years. In addition to performance I would like to look at fees that JP Morgan has received from managing this trust. Also will you please disclose any fees that JP Morgan has obtained in regards to investing in Funds and or trading individual stocks."
>
> In response, to the email, Adams misleadingly provided a "breakdown of account administrative fees" for the ten-year period requested. Administrative fees are charged monthly or quarterly and are calculated as merely a percentage of all investments under management. They are entirely different from the fees, including placement fees, and other revenue that JPM would receive for executing trades, clearing trades, investing in Proprietary Funds or Proprietary Hedge Funds. Moreover, at the time Adams provided Wagley with the breakdown of account fees, Adams did not disclose the $188,245.72 in additional fees that JPM charged to the Penney Trust.
>
> Wagley responded to the sparse production by asking for more complete and comprehensive disclosure: "In regards to fees I received the administrative fees and I appreciate you sending them on. Did the Trust pay any other fees? Fees on stock trades and or bond trades over this period? Did the trust pay fees to any funds? If so what were the amounts?"[62]

38.     In addition to the actions described above, Plaintiffs allege that Adams knowingly participated in JPM's breach of fiduciary duty in the following ways:

> a.     Furthermore, when finally pressed by formal demand of the Plaintiffs in 2016 to identify and fully disclose the entirety of its self-dealing and conflicted transactions, JPM engaged in tactics of delay and, in some cases, refused to respond to Plaintiffs' requests entirely. JPM's only response to this line of questioning was its suggestions that JPM has never received fees over and above trust management fees, which it received as

---

[61] *See id.* at [**APPX0017-APPX0018**] pp. 4-5, ¶ 9; also at [**APPX0036**] p. 23, ¶ 69.
[62] *See id.* at [**APPX0035-APPX0036**] pp. 22-23, ¶¶ 68-70.

compensation to act as Plaintiffs' fiduciary. These representations were entirely discredited by a subsequent letter sent by [Adams], the Trust Officer in charge of administering the Penney Trust, to Mary Frances on January 20, 2017, in which Adams admitted, without any further explanation, that the bank improperly charged the Penney Trust nearly $200,000.[63]

b.  Moreover, at the time Adams provided Wagley with the breakdown of account fees, Adams did not disclose the $188,245.72 in additional fees that JPM charged to the Penney Trust.[64]

c.  Shortly after JPM filed the Withdrawal Petition, Adams sent Mary Frances a letter disclosing, without any explanation, that JPM had improperly charged the Penney Trust $188,245.72 in fees. Remarkably, Adams copied neither the counsel that JPM knew represented Mary Frances nor the son that JPM knew had become the preferred point of contact for Mary Frances. Instead, Adams sent the letter directly and exclusively to the 89-year-old beneficiary of the Penney Trust. While the letter's vague description of the "incorrectly charged fees" is indisputably inadequate, the letter serves as a tacit acknowledgement that, despite its prior representations to the contrary, JPM has inappropriately charged fees to the Penney Trust and treated its assets as it would treat an ordinary account—rather than as a fiduciary.[65]

d.  As Trustee of the Penney Trust, JPM owed the Plaintiffs, as beneficiaries, a fiduciary duty. Adams knowingly participated in JPM's breaches of fiduciary duty of full disclosure by aiding and abetting JPM's breach. As the Trust Officer in charge of administering the Penney Trust, Adams had knowledge of the fiduciary relationship between JPM and the beneficiaries of the Penney Trust and had knowledge that JPM's conduct constituted breaches of its fiduciary duties to Plaintiffs.[66]

The fact that Adams, as Trust Officer of the Penney Trust, knew that Plaintiffs repeatedly requested the information described above and refused to disclose the requested information is alone sufficient to demonstrate that Adams knowingly participated in JPM's breach of the duty of disclosure and candor.

---

[63] *See id.* at [**APPX0017-APPX0018**] pp. 4-5, ¶ 9.
[64] *See id.* at [**APPX0036**] p. 23, ¶ 69.
[65] *See id.* at [**APPX0040**] p. 27, ¶ 85.
[66] *See id.* at [**APPX0041-APPX0042**] pp. 28-29, ¶¶ 93-94.

39.     Based upon the foregoing facts, the Petition summarizes Plaintiffs' allegations against Adams, as the Trust Officer who aided and abetted JPM's breach of non-disclosure, as follows:

> As demonstrated above, Adams intended to assist JPM in committing its breaches of fiduciary duties of non-disclosure to Plaintiffs and gave JPM such assistance or encouragement *by failing to disclose information requested by the beneficiaries, including the amount of fees JPM received as a result of its role as Trustee of the Penney Trust and the amount of fees charged by JPM to the Penney Trust*.[67]

Moreover, Adams' knowing participation in JPM's breach of the duty to disclose contributed to the benefits that JPM received and the damage to the Penney Trust, as Adams' silence allowed JPM to secure substantial benefits for itself in the form of fees (including the nearly $200,000 in undisclosed fees JPM charged the Penney Trust) at the expense of the Penney Trust. In addition, because Adams did not disclose either JPM's preference for self-interested investments or JPM's disregard for Plaintiffs' growth objectives, Plaintiffs were misled into allowing JPM to continue controlling the assets in the Penney Trust, which resulted in increased damages the Penney Trust.

40.     These allegations are far more than unadorned, the-defendant-unlawfully-harmed-me accusations and contain factual content that allows the court to draw the reasonable inference that Defendants are liable for the misconduct alleged. Therefore, Plaintiffs' allegations demonstrate substantially more than a "possibility" of liability for Adams and, under a 12(b)(6) pleading standard, Plaintiffs have sufficiently alleged a claim against Adams for aiding and abetting JPM's breach of fiduciary duty under Texas law.

## IV. REQUEST FOR COSTS AND FEES

41.     Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[68]

---

[67] *Id.*
[68] 28. U.S.C. § 1447(c)

The Court has discretion in determining whether to award costs and fees, and the standard of review on such a determination is whether the Court abused its discretion.[69]

42.     When considering whether to award fees, the Court does not consider a defendant's motive in removing and may award fees "even if removal is made in subjective good faith."[70] Instead, the pertinent question for the Court is "whether the defendant had objectively reasonable grounds to believe the removal was legally proper"[71] at the time of the attempted removal.[72]

43.     The Supreme Court has explained, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."[73]

44.     This Court has held that fees were proper in a case where the defendant "fail[ed] to disclose unfavorable authority in briefings, substitute[d] a favored legal theory for the one [the plaintiff] chose to use when filing the claim, and mischaracterize[ed] the factual allegations found in the affidavit of [the plaintiff's counsel] to suit its own legal theory."[74] Consequently, this Court has held that, in a case where the defendant had to "mischaracterize the theory of the

---

[69] *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

[70] *Id.* ("In deciding this matter, we do not consider Wal–Mart's motive in removing the case to district court. To be sure, the district court may award fees even if removal is made in subjective good faith.").

[71] *Id.* at 292-93 (5th Cir. 2000) ("The application of § 1447(c) requires consideration of the propriety of the removing party's actions based on an objective view of the legal and factual elements in each particular case. We evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that removal was improper. '[T]he propriety of the defendant's removal continues to be central in determining whether to impose fees.' In other words, the question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper.") (internal citations omitted).

[72] *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004).

[73] *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 542 (5th Cir. 2012).

[74] *Johnson v. Zurich Am. Ins. Co.*, 3:11-CV-0344-P, 2011 WL 3111919, at *7 (N.D. Tex. June 29, 2011) (Solis).

case beyond the allegations in the pleadings to avoid unfavorable authority regarding removal" there was no "objectively reasonable basis for seeking removal."[75]

45.     As stated above, Defendants have both: (1) introduced a favorable legal theory instead of responding to the one actually pleaded by Plaintiffs; and (2) mischaracterized the allegations in the Petition.  Specifically, instead of arguing that it was not possible for Plaintiffs to establish aiding and abetting breach of fiduciary duty against Adams, Defendants chose to ignore the actual claim pleaded against Adams in the Petition, as well as existing Texas law, and then intentionally conflated the elements of conspiracy with the entirely separate elements of aiding and abetting breach of fiduciary duty in an effort to manufacture the appearance of a pleading defect and improper joinder.

46.     Indisputably, Plaintiffs have pleaded aiding and abetting against Adams, ***not conspiracy***. Whether Defendants know the relevant law that allows officers and agents to be liable for aiding and abetting a breach of fiduciary duty (and are intentionally choosing to create the misleading impression that it matters whether Adams was acting in the course and scope of her employment) is immaterial. The mere fact that Defendants have effectively cited favorable but completely misplaced law, while simultaneously ignoring relevant Texas law (including law out of the Northern District of Texas) that expressly rejects their argument, is sufficient to demonstrate to the Court that Defendants did not have an objectively reasonable basis for seeking removal at the time such removal was sought.

47.     Furthermore, Defendants mischaracterized the allegations in the Petition in order to create the appearance that Plaintiffs did not allege actions against Adams that would, if true, constitute aiding and abetting breach of fiduciary duty. In the Notice, Defendants represented to the Court that Plaintiffs had only alleged ***two*** breaches of fiduciary duty against JPM: (1) that

---

[75] *Id.*

JPM made inappropriate investment decisions; and (2) that JPM potentially charged improper fees.[76] Defendants further represented to the Court that the sole allegations against Adams were that she: (1) "sent on behalf of JPMorgan as Trustee a letter to the Plaintiffs stating that JPMorgan had incorrectly charged certain fees to the Penney Trust";[77] (2) "provided Plaintiffs a breakdown of the administrative fees charged to the Penney Trust for a ten-year period";[78] and (3) "was present at a meeting between Plaintiffs and JPMorgan in a representative capacity in June 2016".[79]

48.     Not only is this recitation a mischaracterization of the facts actually alleged in the Petition, but Defendants completely omit any reference to Plaintiffs' exceedingly-detailed allegations that JPM breached its duty to ***disclose*** and that Adams, ***specifically***, aided and abetted JPM in this breach. Again, whether Defendants intentionally mischaracterized the facts alleged in the Petition to create the appearance that JPM's failure to disclose, which indisputably involves the actions, omissions and misrepresentations of Adams in her role as the Trust Office for the Penney Trust, was not pleaded in the Petition is immaterial. The mere fact that the Notice does not contain a single reference to the numerous allegations regarding JPM's failure to disclose (as well as Adams' failure to disclose) contained in the Petition is sufficient to demonstrate to the Court that Defendants did not have an objectively reasonable basis for seeking removal at the time such removal was sought.

## V.  PRAYER

49.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court: (1) grant Plaintiffs' Motion to Remand; (2) remand this case back to state court; (3) grant Plaintiffs their

---

[76] *See* Notice at p. 6.
[77] *See id*. at p. 7.
[78] *See id*.
[79] *See id*.

cost and fees incurred in remanding the case; and (4) grant Plaintiffs any other and further relief,

either at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Dated: March 31, 2017                    Respectfully submitted,

                                         **GRUBER ELROD JOHANSEN HAIL
                                         SHANK LLP**

                                         */s/ Michael J. Lang*
                                         **G. MICHAEL GRUBER**
                                         State Bar No. 08555400
                                         mgruber@getrial.com
                                         **MICHAEL J. LANG**
                                         State Bar No. 24036944
                                         mlang@getrial.com
                                         **J. MACHIR STULL**
                                         State Bar No. 24070697
                                         mstull@getrial.com
                                         **ALEXANDRA J. LAMB**
                                         State Bar No. 24091423
                                         alamb@getrial.com

                                         1445 Ross Avenue, Suite 2500
                                         Dallas, TX 75202
                                         Telephone: 214-855-6800
                                         Facsimile: 214-855-6808

                                         ***Attorneys for Plaintiffs***

## Certificate of Conference

I hereby certify that, on March 29, 2017, counsel for Plaintiffs (Michael Lang), conferred with counsel for Defendants (Jessica Pulliam), regarding the issues presented to the Court in Plaintiffs' Motion to Remand. Counsel for Defendants opposed the Motion to Remand. Despite best efforts, counsel have not be able to resolve those matters presented.

*/s/ Michael J. Lang*
Michael Lang

## Certificate of Service

I hereby certify that, on March 31, 2017, a true and correct copy of the foregoing was served on all counsel of record via the Court's ECF system.

*/s/ Michael J. Lang*
Michael Lang